[Criminal No. 182.   Filed March 30, 1905.]

[80 Pac. 363.]

MARTIN UBILLOS, indicted as Francisco Garcia, Defendant and Appellant, v. TERRITORY OF ARIZONA, Plaintiff and Respondent.

1. APPEAL AND ERROR—MURDER—ASSIGNMENT OF ERRORS—NECESSARY. —In a capital case this court will look into the record and review the case, even in the absence of an assignment of errors.

2. CRIMINAL LAW—TRIAL—JURY LIST — REVISION — REV. STATS. ARIZ. 1901, PAR. 2787, CONSTRUED.—Under paragraph 2787, *supra*, providing that the board of supervisors of the several counties, at their first regular meeting after the first Monday in January of each year, shall make a list of all persons qualified to serve as jurors, and shall from time to time revise the same, there is no necessity for the revision of the list where the jury is drawn less than ninety days after the list was made.

3. SAME—MURDER—EVIDENCE — SUFFICIENCY. — Evidence reviewed and held sufficient to sustain a verdict of murder in the first degree.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Yuma. George R. Davis, Judge. Affirmed.

The facts are stated in the opinion.

Frank Baxter and Henry Wupperman, for Appellant.

No appearance for Respondent.

DOAN, J.—The appellant was indicted, jointly with one Samuel Rodriguez, for the crime of murder. The defendants were tried jointly to a jury, and the appellant was convicted on April 7, 1904, of murder in the first degree, and the death penalty imposed, and his co-defendant, Rodriguez, acquitted under the instructions of the court. From the verdict and judgment of conviction, and the denial of a motion for a new trial, an appeal was taken.

There is no assignment of the errors relied upon presented in the counsel's brief, as required by rule 4 of this court; but this being a capital case we will look into the record, and endeavor to determine therefrom the points on which the appellant relies.

The appellant first urges in his brief that the panel for the trial jury was unlawfully drawn. At the beginning of the trial the attorneys for the appellant challenged the array on the ground that the list from which they were selected was not such a list as was contemplated by the statutes of Arizona. The court disallowed the challenge. Paragraph 2787 of the Revised Statutes of 1901 provides that "The board of supervisors of the several counties in this territory, at their first regular meeting after the first Monday in January of each year, or thereafter at any special meeting called for that purpose, shall cause to be made a list of all persons within their respective counties, qualified and liable to serve as jurors and shall from time to time revise the same so as to keep such list as complete as practicable, and such boards shall cause certified copies of such original, and revised lists, to be filed in the office of the clerks of the district courts in their several counties." There was filed as an exhibit of the appellant a list of sev-

eral hundred names, duly certified by the clerk of the board
of supervisors of the county to be "a full, true and correct
copy of the list of all persons within said county qualified
and liable to serve as jurors, as appears from the original
list thereof caused to be made by the board of supervisors
of said county at its meeting on January 12th, A. D. 1904.
Dated this 15th day of January, A.D. 1904." This was further
certified by the clerk of the district court of the first judicial
district of the territory of Arizona, in and for the county of
Yuma, to be a "list of persons qualified to serve as jurors, 1904,
certified copy from board of supervisors filed this 15th day of
January, A. D. 1904, at 30 minutes after 9 o'clock A. M."
This list is criticised by counsel for appellant, as being the
grand register of the county, with alterations therein, but
there is nothing in the record to attack or impeach the cer-
tificate of the clerk of the board of supervisors, or the certi-
cate of the clerk of the district court, that the list is, as it
is shown by the certificates to be, "a true and correct copy
of the list of all persons within the said county qualified
and liable to serve as jurors, as appears from the original
list thereof caused to be made by the board of supervisors of
said county at its meeting on January 12th, A. D. 1904."
The general allegation in appellant's brief that such list has
not been revised from time to time is entitled to scant con-
sideration, when the record shows the list was prepared by the
board of supervisors on January 12, 1904, and the certified
copy thereof filed in the office of the clerk of the district
court on the fifteenth day of January, 1904, and the term of
court wherein this case was tried convened April 4, 1904.
The jury is required to be drawn not less than ten days prior
thereto, so that the jury must have been drawn less than
ninety days after such list was made, and therefore before
there would be a necessity for any revision. The general alle-
gation in the brief that "many on the list were wholly dis-
qualified by reason of not understanding the English lan-
guage" would have been susceptible of proof, if true, but no
evidence to that effect appears in the record to disprove the
certificate of the clerk of the board of supervisors that "the
persons on the list were qualified and liable to serve as jurors."
The challenge to the panel on the grounds given as presented
in the record was properly disallowed.

Neither the jury list of one hundred, as provided by the requirements of paragraphs 2790 to 2794, inclusive, of our statutes, nor the order for drawing the general venire, nor the orders for any special venires for the term that may have been made by the court before this case came on for trial, are presented in the record, although there does appear one order for a special venire of ten during the impanelment of the jury in this case. As these are not attacked or excepted to, it is presumed that the proceedings in these respects were regular and in proper conformity with the requirements of the law.

It is further urged that seven of the jurors who tried the case were not named in the list filed by the board of supervisors. There is nothing presented in the record to indicate that this, if true, would sustain a challenge to the panel, and the individual jurors were all passed by the appellant after examination as to their qualifications on their *voir dire*. The name of one juror who tried the case appears in the special venire of ten that was issued during the impanelment of the jury in this case, and no other special venire of the term is presented in the record. If it be true that six others were not in the original list as filed, it does not appear that they were not contained in special venires for the term ordered in open court prior to the trial of this case. An appellate court reviews the action of a trial court upon the record. Allegations of fact, made in argument of counsel, have no weight unless supported by facts appearing in the record.

The motion for a new trial was based on the one ground that the verdict "is contrary to the law and the evidence." An examination of the instructions given by the court discloses no reversible error therein. The jury were fully and properly instructed upon the crime of murder, the different degrees thereof, the crime of manslaughter, the provisions of the law applicable to their consideration of the evidence, the definition of reasonable doubt, and the presumption of innocence. The evidence presented at the trial was sufficient to support each material allegation in the indictment, to establish every essential element of the crime of murder, and to sustain the verdict of murder in the first degree, and warrant the fixing of the penalty at death. The record discloses that the defendants and the deceased were convicts in the

territorial prison at Yuma, Arizona, and, with three others, were occupants of the same cell. The evening before the killing there was a quarrel between the deceased and the appellant, during which the deceased applied some very offensive epithets to the appellant, and cursed the other inmates of the cell. On the following morning the appellant, having borrowed a knife from a fellow-convict, invited the deceased into the cell and asked him why he had said those things, and the conference resulted in an altercation between them, the appellant being armed with the knife, and the deceased unarmed until during the course of the difficulty he obtained a stick that was used as a brace between the upper cots in the cell. Rodriguez, a cell-mate of the two men, and a co-defendant in the indictment in this cause, came into the cell as the defendant was stabbing the deceased with the knife and the deceased striking at him with the stick. Shortly after Rodriguez's entrance the deceased gave the stick to Rodriguez, and fell over on the bunk, and rolled from there to the floor, and the defendant gave the knife to Rodriguez, who, at the defendant's request, passed it out through the door of the cell to some person on the outside. The physician who was called to examine the body of the deceased, which was found shortly afterwards in the cell, testified that there were several wounds upon the body inflicted with some sharp instrument. In describing the several wounds he says: "He had five wounds. There were four on his lower extremities and one over the heart.—Q. What was the immediate cause of death?—A. Hemorrhage.—Q. From which wound did he die?—A. From the wound under the knee. The artery had been cut and there was a severe hemorrhage.—Q. Did you attend the coroner's inquest?—A. I did.—Q. At that time did you hear the statement of the defendant as to the cause of the death of Simon Aldrete?—A. Yes, sir. He stated that, after the prisoners had been turned out of the cell, he met Simon Aldrete. He said to Simon Aldrete, 'You have been saying some dirty things about me. Come in here; I want to settle with you.' And they went into the cell. I believe that he said Simon struck him once, and he took his knife and began to cut him. And then I believe he said that Aldrete climbed on the bunk, and he let him alone then, after he fell down." The testimony of other witnesses was very

much to the same effect, and the defendant, in his own behalf, testified that he had invited deceased into the cell on the morning of the difficulty, and asked him why he had said those things so ugly that night to him, and that, after some heated discussion and violent language, he killed the deceased. When asked if deceased had anything in his hands at the time he (defendant) pulled out his knife and struck him, defendant answered: "No. He looked for something under his pillow. After he did n't find anything under his pillow and when he turned over towards me, I cut him the first time because he would n't cease. When he struck at me again I cut him in the leg. I stepped to one side and gave him a chance to get out, but, instead of going out, he got up· on top of the bed· to get hold of the stick. Then he began to strike at me with the stick. He struck me on the wrist with the stick. I did n't get hold of the stick with my hands; what I had was a knife." When asked where he got the knife, he answered: "I borrowed it from Antonio Hernandez that same morning.—Q. How long had you had the knife before you invited Simon Aldrete into the cell?—A. Quite a few moments." There is nothing in the record to indicate other than that the jury carefully considered the evidence under the instructions of the court, and regularly returned their verdict, based upon a careful consideration by them of the evidence, under the instructions. Such being the case, there is nothing to warrant this court in disturbing the verdict of the jury or the judgment of the trial court.

The judgment is therefore affirmed.

KENT, C. J., and SLOAN, J., concur.