[Crim. No. 1732. In Bank.—November 7, 1912.]

## THE PEOPLE, Respondent, v. POOLOS PRANTIKOS, Appellant.

CRIMINAL LAW—MURDER—INCOMPETENT EVIDENCE OF PRIOR MURDER— ERROR CURED BY TESTIMONY OF DEFENDANT.—On a prosecution for murder, error in the admission of incompetent evidence to show a prior murder by the defendant, as a motive for the crime for which he was being tried, is cured, if the defendant, as a voluntary witness in his own behalf, testified to facts substantially corroborating all the incompetent evidence admitted.

ID.—KILLING OF POLICE OFFICER—PRIOR MURDER PART OF RES GESTAE— EVIDENCE.—Where the defendant, after being arrested by a police officer, shot him, and immediately afterward, while endeavoring to escape from the scene, shot and killed another officer, the shooting of the first officer was part of the *res gestae* of the killing of

the latter, and on a prosecution for the latter, evidence of the first shooting, and that the officer subsequently died as the result thereof, is admissible.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial.   William P. Lawlor, Judge.

The facts are stated in the opinion of the court.

Jos. T. O'Connor, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, for Respondent.

HENSHAW, J.—Defendant was indicted for the murder of Thomas Finnelly and suffered conviction of murder in the first degree with the death penalty imposed.   The facts, without controversy, show that the defendant was a fugitive from the justice of the kingdom of Greece of which he was a subject.   He was there accused of the murder of his cousin, John Condos.   On the advice of his family he fled to the United States.   According to the laws and custom of his country he was tried during his absence and found guilty.   All this is shown by the testimony of the defendant himself.   A nephew of John Condos so slain, by the defendant, discovered that the defendant was in San Francisco, and on the twenty-sixth day of November, 1911, at the Ferry building in San Francisco pointed out the defendant as a fugitive from justice, to Walter Castor, a police officer, who placed the defendant under arrest.   The defendant submitted without resistance and with the officer proceeded quietly for a distance of about sixty feet.   Then, suddenly, he drew a revolver, shot George Condos, shot the arresting officer twice and fled.   Police officer Thomas F. Finnelly came running to the scene and he too was fired upon by the defendant.   One of the witnesses testified that Finnelly slipped and fell and that the defendant shot him while he was down.   Both officers died from the effects of their wounds.   Condos recovered from his, and the defendant was put on trial for the Finnelly murder.

Defendant was a witness in his own behalf.   He testified to the facts above set forth touching the accusation against him

of the crime of murder, of which he asserted he was not guilty, his flight to America upon the advice of his family, and that he had been wandering about the United States for two years. He testified further that he had been tried and found guilty in Greece of the murder, and that members of the Condos family were seeking him for the two-fold purpose of having him returned to Greece for punishment and of securing the reward which the Grecian government had offered for his apprehension. All this had disturbed him greatly "so that he wondered he had any mind left." He had heard that a member of the Condos family was in San Francisco, and determined to leave San Francisco to avoid trouble. For this reason he was at the Ferry building and had purchased a revolver and was armed with it to prevent any member of the Condos family killing him. At the Ferry he was approached by Condos, who, with much vile language, said that he was going to have him sent to Greece to be executed. The police officer then put him under arrest. He knew that the police officer had authority to arrest him. As they walked along Condos, still talking in Greek, continued his vilification of him and of his family, so that "I lost my head and pulled my gun and started to fire." He sought to kill Condos for his insults. He did not mean to kill and did not know that he had killed the police officers; from the time that he began to shoot his mind was a blank.

Upon this appeal it is asserted that the defendant was deprived of the fair trial to which the law entitled him by the erroneous admission by the court in evidence of testimony concerning defendant's prior murder, his prior trial and conviction, his escape from justice, and the reward offered for his apprehension. It is not contended that legitimate evidence of these facts would be inadmissible, but rather the contention is that the evidence which was offered was incompetent. Thus Condos was asked if he knew of his own knowledge whether or not there was a reward offered by the Grecian government for the apprehension of the defendant, and answered "I know." This evidence was clearly admissible. Upon cross-examination, however, the same witness testified, when asked how he knew about the reward, "they wrote out a letter from Greece." The motion to strike out the testimony touching the reward was denied.

Again, it is said that the evidence admitted, touching the prior murder in Greece, was incompetent. But Condos testified that the murdered man was his uncle and that defendant had shot and killed him with a rifle. His testimony is that fifteen minutes before the murder he was with Prantikos, that Prantikos left him and killed his uncle. He did not actually see the killing, but saw him running away and went after him to catch him. This evidence was clearly admissible. Summing up upon these matters appellant admits, as indeed he must, that evidence of his crime in Greece, his flight from justice, his trial and conviction and the reward offered for his apprehension were one and all admissible as proving a motive for his later crime. (*People* v. *Pool*, 27 Cal. 572; *People* v. *Durrant*, 116 Cal. 179, [48 Pac. 75].) Whatever imperfections existed in the character of the evidence introduced for this legitimate purpose, it is a sufficient answer to say that the defendant himself voluntarily took the witness stand and told a story completely corroborating everything that was testified to by the prosecution, saving in the one particular that he denied having committed the murder in Greece.

Evidence was admitted touching the shooting and the subsequent death of officer Castor. In view of the nature of the murder, the shooting of Castor was unquestionably a part of the *res gestae,* nor can any valid objection be shown to the proof that Castor subsequently died of his wound. That testimony touching the results of the post mortem examination was given with more elaboration and detail than necessary cannot be held to be a ground for reversal.

It is finally said that by the admission of all this evidence ''the defendant was deprived of any defense that rested upon his state of mind.'' He was not deprived of this defense. He made it, and as bearing upon that defense and as showing the reason for his disturbed state of mind he himself testified to many, if not most, of the matters concerning which the prosecution introduced evidence.

The judgment and order appealed from are therefore affirmed.

Shaw, J., Angellotti, J., Melvin, J., Lorigan, J., and Sloss, J., concurred.