[Criminal No. 623.   Filed November 6, 1925.]

[240 Pac. 863.]

# WILLIAM A. LAWRENCE, Appellant, v. STATE, Respondent.

1. JURY—MANDAMUS—CHALLENGE TO JURY SHOULD HAVE BEEN ALLOWED WHERE JURY LIST CONTAINED ONLY ONE-THIRD OF REGISTERED VOTERS OF COUNTY—MANDAMUS LIES TO COMPEL COMPILING OF PROPER JURY LIST.—Since, in view of Civil Code of 1913, paragraphs 2879, 3516, every registered male elector of a county is presumably a qualified voter, a jury list which contained only about one-third of the qualified electors of a county, and which certificate of clerk showed only to be a true and correct list of jurors compiled by board of supervisors in conformity with paragraphs 3510–3561, was not in conformity with paragraph 3522, and a duly made challenge to jury panel, allegations of which were not denied, as provided in Penal Code of 1913, sections 1013–1032, should have been sustained, and board of supervisors could have been mandamused under Civil Code of 1913, paragraph 3523, to perform their duty in respect thereto.

2. CRIMINAL LAW — PRINCIPLE THAT IT IS PRESUMED ANY ERROR IN CRIMINAL LAW IS PREJUDICIAL IS FALLACIOUS, AND REBUTTED BY CONSTITUTION.—The principle of law that any error in a criminal case is presumed prejudicial is fallacious, and is expressly rebutted by Constitution, article 6, section 22, providing that no criminal case shall be reversed for technical error in pleadings or proceedings, when it appears from whole case that substantial justice has been done.

3. CRIMINAL LAW—IMPROPER PREPARATION OF JURY LIST HELD NOT PREJUDICIAL TO ACCUSED, REQUIRING REVERSAL OF CONVICTION.— Where jury list of 6,000 voters was improperly prepared under Civil Code of 1913, paragraph 3522, long before killing for which accused was tried took place, and it appeared that a fair and impartial jury could be readily obtained from such list, a reversal of conviction for murder will not be ordered, since record fails to show prejudice to defendant thereby under Constitution, article 6, section 22, providing for no reversal on ground of technical error, where substantial justice has been done.

4. REMOVAL OF CAUSES—REMOVAL OF MURDER CASE TO FEDERAL COURT ON GROUND THAT BY IMPROPER IMPANELING OF JURY DEFENDANT WAS DEPRIVED OF RIGHT OF CITIZEN OF UNITED STATES HELD PROPERLY DENIED.—Revised Statutes of the United States, section 641 (Comp. Stats., § 1013), providing for removal to federal court

of cases where rights of United States citizens are denied or cannot be enforced in state courts, *held* to have reference to legislative denial or inability resulting therefrom, and not intended as a corrective of errors or wrongs committed by a judicial tribunal in the administration of law at trial, and hence removal of murder case to federal court on ground that improper impaneling of jury deprived accused of rights of United States citizen was properly denied.

5. CRIMINAL LAW—EVIDENCE OF OTHER OFFENSE THAN THAT CHARGED NOT ADMISSIBLE, EXCEPT TO SHOW MOTIVE OR IDENTITY OF PERSON CHARGED WITH OFFENSE.—It is a general rule that no evidence can be introduced against the defendant on trial for a specific offense of any other crime than that charged in the information upon which he is charged, except to show motive or identity of person charged with offense.

6. CRIMINAL LAW—EVIDENCE OF ACCUSED TAKING CAR ADMISSIBLE TO SHOW IDENTITY OF MURDERER, WHERE DECEASED MADE STATEMENTS CONNECTING MURDERER WITH CAR IN QUESTION.—In a prosecution for murder, where deceased made statements connecting one who did the shooting with a certain car, evidence as to accused taking car in another state was admissible to show who was in possession of car on night of murder, and, if incidentally it appeared that car was a stolen one, such fact would not render evidence inadmissible.

7. HOMICIDE—EVIDENCE OF ACCUSED'S INDICTMENT FOR MURDER ELSEWHERE ADMISSIBLE TO SHOW MOTIVE OF ACCUSED TO KILL OFFICER TO ESCAPE CONSEQUENCES OF SUCH CRIME.—In a prosecution for murder of police officer, evidence of accused's indictment in another state for murder *held* admissible to aid jury in establishing motive, as jury might well assume therefrom that accused killed officer to escape consequences of previous crime.

8. WITNESSES—CROSS-EXAMINATION OF ACCUSED'S BROTHER AS TO ADMISSIONS MADE IN COUNTY ATTORNEY'S OFFICE PROPERLY ADMISSIBLE TO IMPEACH HIM AS DEFENSE WITNESS.—In a murder prosecution, where accused's brother took stand on accused's behalf, it was proper to allow county attorney to cross-examine as to statements made in his office after crime was committed for the purpose of impeaching him as a witness, even though such testimony otherwise incompetent as being admission of one accomplice against another after commission of crime.

---

5. Evidence of other crimes in criminal case, see note in 62 L. R. A. 193. See, also, 8 R. C. L. 198, 201.

6. Admissibility of dying declarations, see notes in 56 L. R. A. 382; 6 R. R. C. 238.

9. CRIMINAL LAW—IF EVIDENCE IS COMPETENT FOR ANY PURPOSE, FACT IT DISCLOSES INCIDENTALLY INCOMPETENT MATTER DOES NOT EXCLUDE IT.—If evidence is competent for any purpose, fact that it discloses incidentally incompetent matter does not exclude it.

10. CRIMINAL LAW—ADMISSION OF STATEMENT BY ACCUSED'S BROTHER AFTER MURDER NOT ERRONEOUS, THOUGH INVOLUNTARILY MADE, IT NOT BEING A CONFESSION, BUT AN ADMISSION AGAINST INTEREST.— Rule against admission of statements not voluntarily made applies only to confessions and not to statements against interest, and hence in murder prosecution admission of statements of accused's brother after murder committed *held* not erroneous.

11. HOMICIDE—EVIDENCE HELD TO REQUIRE INSTRUCTION ON MAN-SLAUGHTER AND BOTH DEGREES OF MURDER.—In a prosecution for murder, evidence *held* to require court to instruct upon both degrees of murder and manslaughter.

12. CRIMINAL LAW—REQUESTED INSTRUCTION, THOUGH A CORRECT EX-POSITION OF THE LAW, NOT ERRONEOUSLY REFUSED, WHERE COURT FULLY STATED LAW ON OWN MOTION.—If the court of its own motion fairly and fully states the law on any particular issue of a case, it is not error for it to refuse a requested instruction on the same subject even though defendant's instruction correctly expounds the law.

13. CRIMINAL LAW—REQUESTED INSTRUCTION ON SELF-DEFENSE HELD COVERED BY GIVEN INSTRUCTIONS.—Given instructions on self-defense *held* sufficiently to cover a requested instruction on that issue.

14. HOMICIDE—INSTRUCTION THAT ACCUSED NOT JUSTIFIED IN KILLING OFFICER BECAUSE ARREST WAS UNLAWFUL, UNLESS HE HAD GROUND TO APPREHEND GREAT BODILY HARM, PROPERLY STATED LAW.—An instruction that, though accused was unlawfully arrested, he had no right to kill deceased officer, unless latter in making arrest by some act of his own put life of defendant in danger, and such acts by deceased warranted apprehension in defendant's mind as to his bodily safety, *held* to correctly state the law.

15. HOMICIDE—COURT PROPERLY LIMITED EVIDENCE OF DECEASED'S CHARACTER AND DISPOSITION FOR SOLE PURPOSE OF SHOWING WHO WAS AGGRESSOR.—In a prosecution for murder, *held,* that court properly limited testimony as to deceased's character and disposition to such evidence which tended to show which party was the aggressor.

16. HOMICIDE—COURT'S INCONSISTENCY IN ALLOWING FOUR WITNESSES TO TESTIFY AS TO DECEASED'S VIOLENT CHARACTER, BUT NOT TWO

---

12. See 14 R. C. L. 751.
15. See 13 R. C. L. 916.

OTHERS, DID NOT REQUIRE REVERSAL, WHERE NO REBUTTAL OF-
FERED BY STATE.—In prosecution for murder, where court incon-
sistently allowed four witnesses to testify as to deceased's
violent, turbulent and dangerous character, but would not allow
two others called for same purpose to testify to such facts, *held*
not to require reversal, in view of fact that state did not offer
rebuttal evidence on point, and testimony of four witnesses was
in evidence.

17. HOMICIDE—STATEMENTS MADE BY DECEASED HELD SHOWN TO BE
MADE UNDER CONVICTION OF DEATH, AND ADMISSIBLE AS DYING
DECLARATIONS. — In prosecution for murder, statements made by
deceased after being shot as to being a "goner," bleeding to
death, and as to never getting over it, *held* to indicate that
deceased was under conviction that he was going to die, and such
statements were admissible as dying declarations.

See (1) 35 C. J., pp. 252 (Anno.), 263, 268; 38 C. J., p. 623
(Anno.). (2) 17 C. J., p. 274. (3) 17 C. J., pp. 289, 368. (4) 34
Cyc., p. 1223. (5) 16 C. J., pp. 586, 589, 590. (6) 16 C. J., p. 600.
(7) 16 C. J., p. 601; 30 C. J., pp. 179, 181. (8) 16 C. J., p. 660; 40
Cyc., pp. 2707, 2708. (9) 16 C. J., p. 562 (Anno.). (10) 16 C. J.,
p. 629. (11) 30 C. J., p. 396. (12) 16 C. J., p. 1063. (13) 16
C. J., p. 1063; 30 C. J., p. 368. (14) 30 C. J., p. 263. (15) 16
C. J., p. 854; 30 C. J., p. 229. (16) 17 C. J., p. 335. (17) 30 C. J.,
p. 251.

APPEAL from a judgment of the Superior Court
of the County of Maricopa. M. T. Phelps, Judge.
Affirmed.

Mr. L. C. McNabb, for Appellant.

Mr. John W. Murphy, Attorney General, Mr. Frank
J. Duffy and Mr. Earl Anderson, Assistant Attorneys
General, and Mr. Arthur T. La Prade, County Attor-
ney, for the State.

LOCKWOOD, J.—About midnight on the 5th of
February, 1925, Haze Burch, at that time a police
officer in the employ of the city of Phoenix, was shot
and fatally wounded. He was immediately carried
to the hospital, and on his way there, and while in it,
he made certain statements describing the man he

claimed had done the shooting and his companion. The alarm was immediately given, and search was made throughout the district for two men of this description. The next day William A. Lawrence, hereinafter called defendant, and Babe Lawrence, his brother, were arrested by the city marshal of Tempe on the Tempe Butte. They were brought to the sheriff's office, and while there questioned as to their connection with the shooting. Thereafter they were taken to the state penitentiary at Florence, and two days later again questioned by the county attorney and his assistant; a stenographer taking down what was said. Burch having died of his wounds, they were later jointly informed against for murder, a severance was demanded, and William Lawrence, defendant herein, was tried under the information. The jury returned a verdict of guilty of murder in the first degree, and fixed the penalty at death. After the usual motion for new trial had been made and overruled, defendant appealed to this court.

There are some fourteen assignments of error which we will consider in their order. The first is that the court erred in not sustaining the challenge of defendant to the jury panel. This challenge was filed in proper form, and alleged the grounds to be substantially as follows: That, while the law requires that the boards of supervisors of the different counties at the regular meeting in January of each year "shall cause to be made a list of all persons within their respective counties, qualified and liable to serve as jurors . . . and such boards shall cause certified copies of such original and revised lists to be filed in the office of the clerk of the superior courts in their several counties" (paragraph 3522, Civ. Code, Rev. Stats. Ariz. 1913), the board of supervisors of Maricopa county omitted from the list prepared in January, 1925, nearly two-thirds of the names of those

who were actually qualified and liable to serve as jurors, and that such omission was wilful and deliberate. The challenge was supported by affidavits and certificates which tended to show the truth of the facts set forth in the challenge.

Under chapter 1, title 9, of the Penal Code of 1913, it is provided that, when a challenge is made to the panel, the adverse party should except thereto or else deny the facts set up, and the court must try either the questions of law or fact as the case might be. The record does not show that this procedure was followed, and the challenge was overruled, but whether because the court held the facts alleged were insufficient to justify a challenge, or because in its opinion they were not proved, we are unable to state. Since it does not appear the state denied the allegations of fact set forth in the challenge, we shall assume them to be true, and that the trial court held them insufficient as a matter of law.

The qualifications of jurors are set forth in paragraph 3516, Civil Code, Revised Statutes of Arizona of 1913, which reads as follows:

"3516. Every juror, grand and petit, shall be a male citizen of the United States, a resident of the county for at least six months next prior to his being summoned as a juror, sober and intelligent, of sound mind, and good moral character, over twenty-one years of age, and shall understand the English language. He must not have been convicted of any felony or be under indictment or other legal accusation of larceny or of any felony."

The qualifications of electors are found in paragraph 2879 of the Civil Code, *supra,* which provides:

"Every citizen of the United States . . . of the age of twenty-one years or over, who shall have become a resident of the state one year next preceding the election, and of the county and precinct in which

he claims the right to vote, thirty days, and who, . . . is able to read the Constitution of the United States in the English language, . . . shall be entitled to register for the purpose of voting at all elections, . . . but idiots, insane persons, and persons *non compos mentis* or under guardianship, shall not be qualified to register for any election, nor shall any person convicted of treason or felony be qualified to register for any election unless restored to civil rights.''

It will readily be seen from comparing the above two sections that practically every registered male elector of a county is presumably a qualified juror, and, indeed, many persons who have not yet acquired the qualifications of electors may be entitled to sit upon a jury. It appears that some three months before the jury list was prepared by the board of supervisors there were some seventeen thousand registered male electors in Maricopa county, but that the list as certified to the clerk of the superior court contained only a little over six thousand names. Without even considering the qualified jurors who had not taken the trouble to register, it is apparent that the jury list could not have contained much over one-third of the names which should have appeared upon it. Nor does the certificate of the clerk of the board even pretend to show as it did in *Ubillos* v. *Territory,* 9 Ariz. 171, 80 Pac. 363, that it was a list of ''all persons within the county qualified and liable to serve as jurors,'' but merely that it was ''a full, true and correct list of jurors compiled by the Board of Supervisors in conformity with provisions of title 26, Civil Code, Revised Statutes of Arizona of 1913,'' thus stating a conclusion of law and not an ultimate fact.

While we do not think that a literal fulfillment of the statute is required, or even possible, for the reason that the number of legal jurors in a county the

size of Maricopa fluctuates from day to day and almost from hour to hour, yet we do believe it is the duty of the board of supervisors to make an honest attempt to comply substantially with the law, and, when a list of seventeen thousand presumably qualified jurors is actually existing and easily accessible to them, the certifying of only six thousand names shows on its face that there was not even an effort to comply with the plain language of the statute. No doubt the board of supervisors thought that a list of six·thousand names was ample to insure fair and impartial jurors for any case that might arise in Maricopa county in the year 1925, and that the certifying of seventeen thousand names would merely be an additional expense to the taxpayers, a greater burden upon the officers of the county, and honestly believed they were doing their duty. Public officers, however, have not the right for mere purposes of convenience or economy to disregard the plain language of a statute, even though with the best intentions in the world. It may be argued that a handpicked jury list is better than the one provided by law, but that is a matter for the legislature and not for the members of the administrative or judicial departments of the government to determine. The jury list was not prepared, as set forth in paragraph 3522, *supra,* and the board of supervisors could have been mandamused in the manner set forth in paragraph 3523, and compelled to perform their plain duty. The court erred in denying the challenge to the panel.

There is no doubt that many decisions hold that an error of this kind is always fatal and counsel for defendant with commendable zeal has collated them and urged them upon us. We feel, however, that the principle of law upon which they are necessarily

based, to the effect that it is presumed any error in a criminal case is prejudicial, is a fallacious one.

One of the chief causes for the alarming increase of crime and the lessened esteem in which the administration of criminal justice is notoriously held by the layman undoubtedly is the tendency of the courts to adhere to archaic rules of procedure, when the reasons which caused their adoption have long since vanished. In ancient times a man accused of crime had no right to counsel; could not even testify in his own behalf; had no means of compelling the attendance of witnesses; was not entitled to bail as of right; and the cards were in many ways heavily stacked against him. It was in order to lessen, partially at least, these heavy odds that the courts adopted the rule that any error against a defendant in a criminal case was presumed to be prejudicial. But of late years the situation has changed. Every disability of the defendant has been removed, and he is now brought to trial, not only with every right enjoyed by the state, but with many privileges denied the latter. As an illustration of this we cite a few instances: The defendant must be advised in advance of trial of the exact nature of the charge against him. The state can only guess at his line of defense. He may ask for a change of place of trial, and disqualify the trial judge. The state cannot. He always has more challenges to the jury than the state. He may take the depositions of absent witnesses on his behalf. The state may not take them against him. He need not testify unless he wishes, and the state cannot comment on the fact. If a state's witness fails to take the stand, the defendant may comment as he desires. The state must prove his guilt beyond all reasonable doubt. He may admit doing the act charged, and, if he sets up any special defense, such as insanity, self-defense, lack of criminal intent, etc., he need not

prove it by even a preponderance of evidence. The mere raising of a reasonable doubt as to whether or not the defense is true acquits him. And above all, if he is finally convicted he may appeal at the expense of the state, and show in the appellate court any mistake committed in the trial below, while, if he be acquitted, no matter if as a result of the grossest error by the court, perjury by the witnesses, or bribery of the jury he may with impunity boast of his crime. He is free for all time, for the state may not by an appeal show the unjust acquittal and again place him on trial. To hold that with the balance thus changed in his favor he should be given the additional privilege of claiming that any error of procedure, no matter how trivial, and no matter how little it may have affected the verdict, entitles him to a new trial is indeed to say with one of our law-writers that "in a criminal trial the state has no rights which a defendant is bound to respect."

The people of Arizona themselves have expressed their opinion of this doctrine. Article 6, section 22, of our Constitution, reads as follows:

"Section 22. The pleadings and proceedings in criminal causes in the courts shall be as provided by law. No cause shall be reversed for technical error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done."

This section was undoubtedly inserted for the express purpose of avoiding the many miscarriages of justice occasioned by strict adherence to the old rule of presumption that error is prejudicial, and it is our duty to give it the effect intended by its makers. Whatever may be the rule in other jurisdictions, we hold that in Arizona no cause, civil or criminal, will be reversed for formal error, when upon the whole case it appears that substantial justice has been done,

and that prejudice will not be presumed, but must appear probable from the record.

The jury list in question was prepared long before the defendant had come into Maricopa county, or the killing had occurred, so that obviously it could not have been selected with any intention of discriminating against him. It would certainly seem, in the absence of some showing to the contrary, that a fair and impartial jury could be readily obtained from a list of six thousand names, and the transcript of evidence containing the examination of jurors on their *voir dire* shows that very few of them were in any manner prejudiced in the case. We are satisfied that the defendant secured as fair a jury from the list as prepared as he would have done had the entire seventeen thousand names been included thereon. Notwithstanding the fact that the jury list was not compiled in strict accordance with law, since the record fails to show any prejudice to the defendant thereby, under article 6, section 22, *supra,* we will not reverse the case on that ground.

The second assignment of error is that the court refused to remove the cause to the federal court on the petition filed, alleging that the defendant was about to be deprived of his civil rights and rights accorded to the citizens of the United States. This is evidently predicated upon section 641 of the Revised Statutes of the United States (Comp. Stats., § 1013) which has been construed by the Supreme Court of the United States in *Ex parte Virginia,* 100 U. S. 313, 25 L. Ed. 667, wherein the court says:

"In other words, the statute has reference to a legislative denial or an inability resulting from it. . . . The statute was not, therefore, intended as a corrective of errors or wrongs committed by judicial tribunals in the administration of the law at the trial. . . . If, as in this case, the subordinate officer whose

29 Ariz.—17

duty it is to select jurors fails to discharge that duty in the true spirit of the law, . . . it can with no propriety be said that defendant's right is denied by the state and cannot be enforced in the judicial tribunal. . . . We cannot think such cases are within the provisions of section 641.''

It appeared upon the face of the petition that the defendant was not entitled to remove his case to the federal court, and the trial court properly denied it.

The third and fourth assignments are that the court erred in permitting the state to offer evidence of two previous crimes committed by the defendant, one being that of larceny of a certain Nash car in Oklahoma, and the other being of an alleged murder in Texas. It is, of course, the general rule that no evidence can be introduced against the defendant on trial for a specified offense of any other crime than that charged in the information upon which he is tried. Citations are unnecessary so far as the general principle is concerned. It is equally established, however, that there are certain well-known exceptions to the rule. In *Crowell* v. *State,* 15 Ariz. 66, 136 Pac. 279, we discuss the general rule, and hold that among these exceptions are:

''(1) Motive, e. g., the commission of one crime to suppress evidence of another crime.

''(5) The identity . . . of the person charged with the commission of the crime on trial, e. g., that the defendant charged with murder used stolen tools to enter house and shot the victim with a pistol stolen from another house. . . . ''

In order to determine whether the evidence complained of falls within any of the exceptions, it will be necessary for us to review the testimony to some extent.

The state in its case in chief was unable to offer any direct evidence showing that defendant was the

person who fired the shot which resulted in the death of Haze Burch. It was therefore necessary for it to rely on circumstantial evidence as to the identity of the party who did the shooting. Burch had made certain statements connecting the man who did it with the Nash car found standing upon the street. The evidence in regard to the taking of the car from Oklahoma tended to show who was in possession of it the night of the shooting, and there was no attempt upon the part of the state to go any further than was necessary to make the connection, and, if incidentally it appeared that the car was a stolen one, that does not render the evidence inadmissible, and the court correctly admitted it. It comes under exception 5, as stated in the Crowell case, *supra.*

The evidence in regard to the indictment of the defendant for a murder occurring in the state of Texas was offered on a different theory. The deceased, Burch, made the statement after the shooting that he was about to arrest defendant and his brother for stealing some gasoline, when they refused to submit to arrest and, without any other apparent cause, shot him. One of the recognized exceptions to the rule excluding evidence of other crimes is that they may be shown to establish motive for the particular offense on trial. In this case defendant was charged with a deliberate and premeditated killing. It is not the usual experience of mankind that a person who is arrested on the charge of a mere misdemeanor will on that ground kill the arresting officer, and it would be but natural for a jury, knowing nothing but the fact that the arrest was made for a misdemeanor, to presume that there must be something which caused the killing besides such arrest. That something might be either some act on the part of the officer justifying the defendant in shooting him in self-defense or it might be something connected with the

defendant which would cause him to at all hazards resist the arrest. In the one case the shooting would be justifiable, while in the other it would not. It was highly material for the jury to determine what was the true motive for the defendant's action.

If as a matter of fact defendant was a person of previous good reputation and unblemished character, who had committed nothing but this one petit misdemeanor, it would be but reasonable to suppose that the officer's conduct was not what the latter had claimed it to be. On the other hand, if defendant were under indictment in some other jurisdiction for a crime carrying with it the death penalty, the jury might well assume that he would deliberately and wilfully kill the officer rather than be taken to a place where his identity might be determined and the consequences of his previous crime visited upon him. The case of *People* v. *Prantikos,* 164 Cal. 113, 127 Pac. 1029, is well in point. In that case the state was allowed to go into the full details of the previous crime even when some of the details were hearsay, while in this the evidence was confined to the indictment itself, and the identity of the defendant with the man named in the indictment. See, also, *People* v. *Wheaton,* 64 Cal. App. 58, 220 Pac. 451; *People* v. *Bringhurst,* 192 Cal. 748, 221 Pac. 897; *People* v. *Argentos,* 156 Cal. 720, 106 Pac. 65; *Williams* v. *Commonwealth,* 128 Va. 698, 104 S. E. 853; *Smalls* v. *State,* 99 Ga. 25, 25 S. E. 614; *Graham* v. *Commonwealth,* 164 Ky. 317, 175 S. W. 981.

The fifth assignment of error was that the court permitted defendant's brother to be cross-examined as to admissions made in the office of the county attorney after the alleged crime had been committed; defendant not being present thereat. Counsel for defendant urges, first, that the declarations or admissions of a conspirator made after the crime is fully

completed are not admissible as against his co-con-
spirator, and, in the second place, that the statements
offered in evidence were not voluntarily made. The
evidence complained of was not offered by the state
in its case in chief. Both defendant and his brother,
Babe Lawrence, however, took the stand in the de-
fendant's case, and the cross-examination objected to
was offered by the county attorney on the theory that
it impeached the testimony of Babe Lawrence given
during the trial.

The first objection of counsel for defendant is cor-
rect as a statement of a general law (*Crowell* v. *State,
supra*), and, had Babe Lawrence not taken the stand,
these admissions would not have been competent for
any purpose. When, however, he did testify, he was
open to impeachment in the same manner as any
other witness, and an examination of the record
shows clearly that the alleged admissions did tend to
impeach his testimony at the trial. This is another
example of the rule previously referred to that if
evidence is competent for any purpose, the fact that
it incidentally discloses otherwise incompetent matter
does not exclude it.

The second objection that the statements were not
voluntarily made applies only to confessions. These
statements, however, which were offered are not con-
fessions, but admissions against interest, and the rule
as to voluntary statements does not apply in such
cases. The difference is well pointed out by the Su-
preme Court of Kansas in the case of *State* v. *Camp-
bell*, 73 Kan. 688, 9 Ann. Cas. 1203, 9 L. R. A. (N. S.)
533, 85 Pac. 784, in which the court says:

"A 'confession,' in a legal sense, is restricted to
an acknowledgment of guilt made by a person after
an offense has been committed, and does not apply to
a mere statement or declaration of an independent
fact from which such guilt can be inferred. . . .

"Statements and declarations by a defendant in a criminal action in denial of guilt while a witness before a grand jury are not confessions within the rule requiring them first to be shown to have been made voluntarily before they are competent evidence against him."

See, also, *State* v. *Reinhart,* 26 Or. 466, 38 Pac. 822; *Riley* v. *State,* 1 Ga. App. 651, 57 S. E. 1031; *State* v. *Novak,* 110 Iowa, 717, 79 N. W. 465; *State* v. *Picton,* 51 La. Ann. 624, 25 South. 375.

The court did not err in permitting the cross-examination of Babe Lawrence along the lines objected to.

The sixth assignment of error is that the court erred in giving to the jury a charge on first degree murder at all, and that the charge was argumentative and amounted to a comment on the testimony. The particular instruction objected to is extremely lengthy, and we will not quote it. We have examined it carefully, however, and are of the opinion that it fully and correctly states the law as to first degree murder. The entire evidence in the case was of such a nature that it was the duty of the court to instruct upon both degrees of murder and manslaughter. There is no merit in the sixth assignment.

The instruction complained of in the seventh assignment defines manslaughter. It also fairly states the law on this issue, and the court properly gave it.

The eighth assignment is that the court erred in refusing defendant's instruction No. 1 on self-defense and in giving its own instruction on the same subject. It is the rule in this jurisdiction that, if the court of its own motion fairly and fully states the law on any particular issue of a case, it is not error for it to refuse to give an instruction requested by defendant on the same subject, even though defendant's instruction also is a correct exposition of the law.

*Sheehy* v. *Territory,* 9 Ariz. 269, 80 Pac. 356; *Rain* v. *State,* 15 Ariz. 125, 137 Pac. 550.

We have carefully compared the two instructions in question, and are of the opinion that the court covered the issue of self-defense fairly and completely, and it was therefore not error to refuse defendant's instruction.

The ninth assignment is that the court erred in giving an instruction to the effect that an unlawful arrest is not sufficient to justify a killing to prevent such arrest, or reduce it to manslaughter. The particular instruction complained of reads as follows:

"If you find from the evidence beyond a reasonable doubt that the attempted arrest of defendant by deceased was unlawful and not justified, that is, if you find that defendant had committed no public offense, still there is no right existing to kill an officer to escape an unlawful arrest, unless the officer by some act of his own, in making the arrest, put the life of the defendant in danger, or did that which would cause him great bodily injury, or did some acts in making or attempting to make the arrest such as would warrant an apprehension in the defendant's mind that his life was in danger, or that great bodily harm would come to him, unless he used the pistol upon the officer, and which demanded of him the act of slaying the officer in order to protect his body from such danger."

Counsel for defendant takes the position that an arrest is so abhorrent to the principles of our free and untrammeled democracy that a person who is illegally arrested, even by an officer of the law, may, in order to resist such arrest, if necessary, kill the officer, though at the time he is in no danger of anything but a mere detention for a short time till his innocence can be established. There are a few jurisdictions which hold the rule as stated, but the overwhelming weight of authority is to the effect that a

person is justified in taking a life only when he has reasonable ground to apprehend that he is in imminent danger of death or great bodily harm, and he is not justified in killing merely for the purpose of resisting an unlawful arrest or other restraint upon his liberty, and where the only injury which can be reasonably apprehended is unlawful detention for a short time. *Sanders* v. *State,* 181 Ala. 35, 61 South. 336; *Coats* v. *State,* 101 Ark. 51, 141 S. W. 197; *People* v. *Bradley,* 23 Cal. App. 44, 136 Pac. 955; *Keady* v. *People,* 32 Colo. 57, 66 L. R. A. 353, 74 Pac. 892; *Wall* v. *State,* 153 Ga. 309, 112 S. E. 142; *Territory* v. *Trapp,* 16 N. M. 700, 120 Pac. 702; *Condron* v. *State,* 69 Tex. Cr. 513, 155 S. W. 253. The instruction complained of was a correct statement of the law.

Assignment No. 10 refers to an instruction requested by the defendant which the court refused to give. This instruction is also based on the theory advanced by defendant in support of the previous assignment of error, and extends the right of resisting arrest further than the law justifies. It was properly refused.

Assignment No. 11 is that the court erred in instructing on the law of lawful and unlawful arrest when there was no evidence that the attempted arrest was lawful. We think the evidence was in conflict on this point to such an extent that it was not error to instruct on the issue, and the instructions correctly stated the law.

Assignment No. 12 is that the court erred in refusing to permit the witness Ogburn to testify as to the general reputation which the deceased bore in the community in which he lived as being a man of overbearing temperament, violent, turbulent and dangerous, and quick on the shoot. The transcript of evi-

dence shows that the court held there might be an inquiry as to the general reputation of the deceased as an officer along these lines. The state objected to any testimony of this kind, but the court said:

"I will overrule the objection, and state the limitation of the evidence now offered. It will be received for the purpose in so far as it may tend to show or not show whether the deceased might have been the aggressor at the time of the affray, no other purpose."

A number of questions were asked of the witness, some of which were allowed to be answered, and others of which were not. It is not claimed that defendant knew anything about the actual character of deceased or his reputation. The law is that in such circumstances evidence that the deceased had a disposition of a nature which might have caused him to be the assailant is admissible for the sole purpose of showing who was the aggressor, and for no other purpose, and the court properly so limited it. *Bogue* v. *State,* 152 Ark. 378, 238 S. W. 64; *Jett* v. *State,* 151 Ark. 439, 236 S. W. 621; *Carr* v. *State,* 147 Ark. 524, 227 S. W. 776.

There were seven witnesses called by the defendant for this purpose. Four of these testified that deceased bore a bad reputation for being overbearing, violent, turbulent and dangerous in character. One stated that he did not know his reputation in this respect. The other two were allowed to testify that the deceased had a bad reputation as being of an overbearing disposition and temperament as an officer; but for some reason the court declined to permit them to testify as to his reputation for being violent, turbulent or dangerous. We do not understand why this distinction was made between the witnesses, and we think the trial court should have allowed the same questions to be asked of the last two witnesses as it

did of the other five; but, in view of the fact that the state did not offer any evidence in rebuttal on this point, and that four witnesses were allowed to testify to such bad reputation, we do not think the error of sufficient importance to· require a reversal of the case.

Assignment No. 13 is covered by what we have said in regard to assignment No. 12.

Assignment No. 14 is to the effect that the court erred in permitting the state to prove certain things the deceased said after the shooting. It is claimed by the defense that these statements were not a part of the *res gestae,* nor were they dying declarations. The testimony on behalf of the state is that deceased made several remarks on his way to the hospital. We quote therefrom:

"Take care of my wife and babies."
"They got me pretty bad."
"I am a goner."
"I am bleeding inside."
"I do not think I can make it."
"I am bleeding to death inside."
"I will never get over it."

It seems to us that these statements would certainly indicate the person making them was under the conviction that he was about to die, and that other statements of fact made at the same time were admissible as dying declarations. *State* v. *Casey,* 108 Or. 386, 213 Pac. 771, 217 Pac. 632; *Duren* v. *State,* 158 Ga. 735, 124 S. E. 343; *Griffin* v. *Commonwealth,* 204 Ky. 783, 265 S. W. 327; *Benton* v. *State,* 158 Ga. 41, 122 S. E. 775.

This completes the assignment of errors, but, in view of the gravity of this case, we have also examined the entire transcript of evidence and the instructions of the court carefully. Notwithstanding the errors committed by the trial court to which we have referred above, we are of the opinion that the

defendant was given a fair and impartial trial before a jury of his peers, and that upon the whole case substantial justice has been done.

The judgment of the trial court is affirmed.

McALISTER, C. J., and ROSS, J., concur.