## TOM McLAUGHLIN *et al.* v. STATE.

No. A-3574—Opinion Filed May 7, 1921.

(197 Pac. 717.)

(Syllabus.) .

1. **EVIDENCE—Corroboration of Accomplice.** Where, in a prosecution for conjoint robbery, an accomplice testifies that defendants aided him in the commission of the crime, and the parties robbed identify defendants as having participated in the robbery, the corroboration of the accomplice is sufficient.

2. **EVIDENCE—Other Offenses Incidentally Involved.** Evidence material to the issues, and tending to shed light on the guilt of defendants, is not rendered incompetent because it may, incidentally, involve defendants in the commission of a distinct offense.

3. **ROBBERY—Conjoint Robbery—Evidence Sufficient.** Evidence examined, and held sufficient to sustain the conviction.

*Appeal from District Court, Okmulgee County;*

*E. M. Carter, Special Judge.*

Tom McLaughlin and Allison Ivey were convicted of conjoint robbery, and they appeal. Affirmed.

*F. F. Nelson* and *J. P. Evers,* for plaintiffs in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall* and *E. L. Fulton,* Asst. Attys. Gen., for the State.

MATSON, J. This is an appeal from the district court of Okmulgee county, wherein, on the 23d day of December, 1918, plaintiffs in error, Tom McLaughlin and Allison Ivey, hereinafter designated defendants, were convicted of the crime of conjoint robbery, and sentenced to serve a term of seven years' imprisonment each in the state penitentiary.

The offense was committed near the town of Dewar on the night of October 28, 1918, about 8:30 o'clock. Clarence Vetters and Glen Wells, young men who lived in the vicinity of Dewar, testified that they were held up and robbed by three men who held pistols on them at a time when they (Vetters and Wells) were engaged in repairing a puncture to an automobile tire on a public highway in Okmulgee county a short distance from the town of Dewar. Vetters and Wells testified that these three men, with handkerchiefs tied over the lower part of their faces, two of them wearing large white hats and the third a cap, approached them with drawn pistols and ordered them to hold up their hands; that Wells immediately complied, but that Vetters continued fixing the punctured automobile tire, when one of the men struck Vetters in the head with a pistol and again ordered him to hold up his hands, after which Vetters complied with the request; that thereupon the three men searched both Wells and Vetters, and took a sum of money, approximately $8, from the person of Vetters.

A codefendant, Jack Dodson, who was jointly informed against with these defendants, pleaded guilty, and was sentenced to a term of five years' imprisonment in the penitentiary. Thereafter he appeared as a witness for the state and testified that he and the defendants McLaughlin and Ivey held up and robbed Vetters and Wells at the time and place and under the circumstances testified to by Vetters and Wells; that after the robbery all three defendants came that night to Okmulgee, and there separated, but, before separating, defendant Dodson changed hats with defendant McLaughlin; that after they separated Dodson never saw the two defendants again until they were arrested and placed in jail with him. Dodson also testified that he

had become acquainted with the other two defendants in West Tulsa, Okla., and had known them for about one year prior to the commission of this crime; that the three defendants left West Tulsa, Okla., on a train about 3 o'clock in the afternoon of October 28th, going from there to Sapulpa, from there to Okmulgee, and from Okmulgee to Henryetta, and from Henryetta to Dewar; that they arrived in Henryetta after dark on the night of October 28th; that they left West Tulsa with the intention and purpose of staging a holdup of a store near Dewar, Okla., and that each of them carried pistols with them, defendants Ivey and McLaughlin having large caliber Colt's revolvers, while defendant Dodson had a smaller pistol.

After the arrest of defendants McLaughlin and Ivey in Tulsa county, some two or three weeks after the commission of the offense, they were taken to jail at Henryetta, Okla., and there both of them were positively identified by the witnesses Vetters and Wells as having participated in the robbery. There is also some other evidence in the record substantially to the effect that three persons answering the description of these three defendants were seen in Dewar and the neighborhood thereof on the evening of October 28th, shortly before the commission of this robbery, but none of the witnesses except Vetters and Wells were able to identify positively any of these defendants but Dodson.

The defense relied upon by each defendant was an alibi; numerous witnesses being introduced in an effort to convince the jury that both of these defendants were at their homes in West Tulsa, Tulsa county, Okla., on the afternoon and the evening of October 28th, 1918, at the time

it was testified to by Vetters, Wells, and Dodson that the robbery took place.

It is first contended that, the witness Jake Dodson being an accomplice, there was no sufficient corroboration of his testimony to authorize the conviction.

Section 5884, Revised Laws 1910, provides:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

In this case the witnesses Vetters and Wells both identified defendants McLaughlin and Ivey as two of the parties who, acting with a third party, held them up and robbed them near the town of Dewar, Okmulgee county, on the 28th of October, 1918. This evidence, if believed by the jury, constituted sufficient corroboration of the accomplice Dodson, as it not only tended to connect these defendants with the commission of the offense, but directly connected them with its commission. The requirements of section 5884, *supra,* therefore, were more than complied with in this case. The argument advanced in support of this assignment of error is lodged against the credibility of the witnesses Vetters and Wells rather than against the sufficiency of their evidence as a corroboration of the accomplice Dodson. The credibility of these two witnesses, and the weight to be given their testimony, were matters exclusively for the jury to determine. This court finds the corroborative evidence sufficient to meet the statutory requirements.

It is next contended that the trial court erred in permitting evidence of other independent crimes not connected with the one for which defendants were being tried, to be introduced in evidence over objection and exception of defendants. In support of this assignment, the court is referred in the brief of counsel for defendants to the following evidence elicited from the codefendant, Dodson:

"A. When we held these boys up, I held up the least one. We all had our guns out. I said, 'Put them up,' and when they put them up he didn't have nothing on him, the one I was holding up, but six-shooter shell, just a shell and bullet in it; and the other fellow would not put them up, and Dick hit him over the head with his gun, and he put them up then, and he got money off of him. I don't know how much he had.

"Q. Was this money in anything? A. In a pocketbook part of it was. He took the pocketbook, and this man they call Vetters asked for the registration card in it. He said, 'I cannot lose that or I will go to the pen.' Dick said he would give it back to him, and he went around in front of the car and opened the pocketbook and came back and gave it to him.

"Q. Well, now where did you go from that place? A. Well, we went from there to Spelter City and over on the railroad track and down the track to Henryetta, and when we got down there by the coal chute we changed hats.

"Q. Who did? A. Me and Tom McLaughlin.

"Q. What kind of hats did you all wear that night? A. I had on a big white hat, Tom had on a white hat, and Dick had on a white hat; all three of us had white hats on.

"Q. All white hats? A. Two of us big hats, and the other one small, and we went over by the coal chute, down by Henryetta, and we split up by the ice plant, be-

tween there and the depot.   I went over there—

"Q.   Wait a minute; did you say all three of you had hats on?   A.   We all three had hats on; Dick had a cap in his pocket, and during the holdup he wore a cap.

"Q.   Where did you change hats with Dick Ivey?   A. Down by the coal shute with Tom McLaughlin.

"Q.   You changed with Tom McLaughlin.   A.   Yes, sir.

"Q.   And what kind of hat did you give McLaughlin? A.   I gave him a big white hat with a little leather band around it, and there was a little burnt place on the rim.

"Q.   Where did you get that hat? A.   I got that hat at the Union Clothing Store in Henryetta.

"By Mr. Evers:   We object to that question and ans- that hat.

"By the Court:   Overruled.

"By Mr. Evers:   Exception.

"Q.   About when?   A.   Four months ago.

"By Mr. Evers:   We object to that question and an- swer, and ask that it be stricken from the record.

"By the Court:   Overruled.

"By Mr. Evers:   Exception.

"Q.   Have you ever—after you changed hats with him there, did you stay or what did you do?   A.   We went on down to Henryetta to the ice plant there, or depot and we split up.   I went on up town, and they came up later on, and I got a car and went out to where some sick folks were out by the pump station and set up the rest of the night.

"Q.   Did you ever get your hat back?   A.   No, sir.

"Q.   Who got the hat?   A.   Tom McLaughlin.

"Q. Is that the hat? (Exhibiting to witness a hat.)

"A. That is the hat.

"Q. Is it the first time you saw that hat since that night? A. It is the first time I ever seen it.

"Q. Could you recognize or know the hat you got from him? A. Yes, sir.

"Q. Is that the hat (exhibitin ga hat to the witness)? A. That it the hat.

"Q. Are those the hats you and Tom were wearing that night? A. Yes, sir.

"Q. Do you know when these boys went back to Tulsa?

"A. They told me when they came back down.

"By Mr. Evers: We object to what they told him.

"By the Court: Overruled.

"By Mr. Evers: Exception.

"A. They told me that they went back the next morning; they told me they looked for me next morning in town and could not find me; that they walked down the track and gave up looking for me.

"Q You and these defendants have been laying in jail some time up there together? A. Well; yes, sir.

"Q. Have you had other talks with them? A. I don't know as I did.

"Q. Did you have a talk with them about the hats?

"A. Yes, sir; about the hats.

"Q. Just tell what was said.

"By Mr. Evers: Objected to as irrevelant, incompetent, and immaterial.

"By the Court: I think it is proper. Overruled.

"By Mr. Evers: Exception.

"A.    They said for me to not to say nothing about the hats; that they were in a stick-up deal in Tulsa and they got my hat; they said they were in a stick-up deal in Tulsa and—well, they were in it; that the law got my hat and their guns; for me not to say anything about it."

Each of the defendants McLaughlin and Ivey denied that they were with Dodson on the occasion of this robbery, that they had exchanged hats with him, and further denied any knowledge of the two large white hats which were afterwards found by the sheriff of Tulsa county on the night of November 2, 1918, about midnight, on a public highway near the city of Tulsa, when the sheriff of Tulsa county was investigating an attempted holdup at that time and place.

Under the issue in this case, the finding, on the night of November 2, 1918, of the large white felt hat (commonly called a "cowboy" hat), which was later identified as the hat worn by the codefendant, Dodson, on the night of this robbery, and which was found near the city where defendants McLaughlin and Ivey lived, was material in that it tended circumstantially to connect at least the defendant McLaughlin with the commission of this crime, and also tended to corroborate the accomplice Dodson, as it strongly indicates the truthfulness of the statement of Dodson that he and defendant McLaughlin exchanged hats on the night of this robbery and shortly thereafter.

It appears from the record that Dodson was arrested in the city of Okmulgee on the day of Saturday, November 2, 1918, and that these hats were not found near the city of Tulsa until the night of November 2, 1918. Shortly after Dodson was arrested he confessed his connection with

the crime, implicating McLaughlin and Ivey in its commission, and telling of the circumstance of the exchange of hats and describing the hat that he (Dodson) wore on that night (a large white felt cowboy hat, with a burned place in it). This occurred before Dodson knew of the finding of this hat by the sheriff of Tulsa county, and also before the codefendants, McLaughlin and Ivey, were arrested.

The conversation, therefore, detailed by Dodson with McLaughlin and Ivey, in which they asked him to say nothing about the exchange of the hats, because they were afterwards engaged in an attempted holdup in Tulsa county, and there lost Dodson's hat, was an admission against interest and tended to show guilty knowledge of this crime, and competent for that reason, although it incidentally referred to the attempted later commission of a similar offense not directly connected with the one for which they were then being tried, as it has repeatedly been held that evidence which is otherwise relevant and material to the issues is not inadmissible, even though it may tend to establish a defendant's guilt of another distinct crime. In principle the following cases are in point: *Hunter v. State,* 3 Okla. Cr. 533, 107 Pac. 445; *Miller v. State,* 9 Okla. Cr. 255, 131 Pac. 717, L. R. A. 1915A, 1088.

In Ruling Case Law, vol. 8, p. 200, speaking on this subject, it is said:

"It is often difficult to determine the degree of relevancy which entitles the prosecution to introduce evidence showing the commission of other crimes, but much of the difficulty with reference to such evidence disappears if the evidence is considered strictly upon the ground of its relevancy to the purpose for which it is sought to be introduced, regardless of the fact that it may incidentally show the com-

mission of some other offense. In other words, there ought not to be any more difficulty in deciding the relevancy of such evidence than there is when the circumstance of some other offense appearing is not involved."

For the reason stated, therefore, the trial court did not err·in permitting the admission of this evidence.

Lastly, it is contended that the verdict is not sustained by sufficient evidence.

With this contention the court is unable to agree. The evidence is in direct conflict. As heretofore stated, the evidence of the codefendant, Dodson, and of the witnesses Vetters and Wells positively connects these defendants with the commission of this crime, and there are other circumstances tending strongly to the effect that all three of these defendants were in the immediate vicinity of the commission of this crime shortly prior thereto. On the other hand, numerous witnesses, most of whom are relatives and intimate friends of defendants testify that these defendants were in West Tulsa, Okla., at the time the crime was committed .

The weight of the evidence and of the credibility of the witnesses were matters exclusively for the jury's determination, and it has been repeatedly held by this court that on appeal, if there is any apparently credible evidence from which the jury could reasonably conclude that defendants are guilty as charged, this court will not substitute its judgment for that of the jurors and the trial court, even though the evidence be in direct conflict. *Gunter v. State.* 16 Okla. Cr. 476, 184 Pac. 797; *Felas v. State,* 16 Okla. Cr. 631, 135 Pac. 839; *Tittle v. State,* 14 Okla. Cr. 562, 174 Pac. 295.

We find in this record sufficient evidence on the part of the state which, if believed, clearly establishes the guilt of each of these defendants. We further find the trial free from any prejudicial error.

Judgment affirmed.

DOYLE, P. J. and BESSEY, J., concur.