## LILLIE AUSTIN v. STATE.

No. A-4365.  Opinion Filed Sept. 29, 1924.
(228 Pac. 1113.)

(Syllabus.)

1.  **Evidence—Competency as Res Gestae Though Showing Another Offense.** Evidence which is a part of the res gestae is competent, although it may incidentally show that the defendant committed some other offense than that for which he is being tried.

2.  **Homicide—Demeanor of Defendant Immediately Preceding Killing Competent to Show He Was Armed and in Vicious Humor.** It is competent to show the actions, conduct, and general demeanor of the defendant immediately preceding the killing for the purpose of proving that he was armed and in a vicious humor; provided that such conduct is so near to the time of the homicide as to tend to show the state of mind of the defendant at the time of the killing.

3.  **Homicide—Statement of Accused Immediately After Crime Tending to Show Lack of Remorse and Rebutting Testimony Supporting Self-Defense.** Where the issue is self-defense, a statement made by the defendant, a short time after the commission of the homicide, which indicates the frame of mind of the defendant at that time and tends to show that he had no remorse for having taken the life of the deceased and tends to rebut the testimony of the defendant that he acted in self-defense, is competent.

4.  **Homicide—Abandonment of Difficulty After Provoking Same— Question for Jury—Instruction.** Where the evidence is conflicting as to whether or not the defendant provoked the difficulty and thereafter abandoned the same in good faith, these

issues are for the jury under proper instructions by the trial court. An instruction on this phase of the law examined and approved as applicable to the evidence in the case.

5. **Appeal and Error—Witnesses—Limit of Examination of Witness Discretionary.** The limit of the examination of witnesses is a matter resting in the discretion of the trial court. There must be a manifest abuse of such discretion, prejudicial to the defendant, before a conviction will be disturbed because the trial court limited the redirect examination of the defendant.

Appeal from District Court, Pittsburg County; Hal Johnson, Special Judge.

Lillie Austin was convicted of manslaughter in the first degree and sentenced to five years' imprisonment in the state penitentiary, and appeals. Affirmed.

Wilkinson & Hudson, for plaintiff in error.

George F. Short, Atty. Gen., and John Barry, Asst. Atty. Gen., for the State.

MATSON, P. J. This is an appeal from the district court of Pittsburg county wherein plaintiff in error, hereinafter referred to as defendant, was convicted of the crime of manslaughter in the first degree and punishment assessed as above stated. Defendant, a negro woman, had been living for several years with a negro man by the name of Albert Haley as husband and wife. On the 15th day of October, 1921, there was a supper given at the home of another negro woman in the town of Canadian, Pittsburg county, at which place these parties lived. This supper was attended by a number of negroes of that community, among whom were the defendant and Haley. The supper was served in the yard. It was a moonlight night, and the record also discloses that there were several artificial lights in the yard. In addition to the table on which the supper was served, there was also a phonograph, used for musical purposes. After the defendant and the deceased had been at the supper for some

little time, the deceased requested the defendant to go to their home and bring his coat and gun; this the defendant did. When the defendant returned, she discovered the deceased with his hands on the shoulder of Frankie Gibson, a colored girl, in the midst of a crowd standing around the phonograph. The attitude of the deceased toward the Gibson girl, according to the defendant's own testimony, made her mad, and according to the state's witnesses the defendant immediately proceeded to cut the deceased and this colored girl with a knife, at the same time cursing them. The deceased shortly thereafter went to a wood pile which was near by and picked up a piece of wood and, facing the defendant, demanded that she drop the revolver which she was then holding in one hand and this knife which she was holding in the other. This the defendant refused to do, and the deceased advanced toward her and struck her over the head with the piece of wood. This piece of wood turned out to be rotten and fell to pieces. The defendant, at the time she was struck with the wood, stabbed the deceased in the heart with a knife, and he walked away a few steps and fell and soon thereafter died.

The defendant admits stabbing the deceased at the time she was struck with a piece of wood, but denies that she cut the deceased and the Gibson girl prior to that time. Her defense was that she acted in her necessary self-defense.

After Haley had died and his body had been carried to the home of a relative, it appears that the defendant went to that place and made this statement:

"Well, I killed the damned man and woman too. I will bury the damned man myself. I don't want his folks to bury him. I will bury him myself."

The first and third assignments of error may be treated together. The first is that the prosecuting attorney was per-

mitted, over the objection of the defendant, to state in the opening statement to the jury that the defendant had cut Frankie Gibson. The third assignment is to the effect that the court erred in permitting the state to prove the cutting of the Gibson girl, and also in admitting evidence of the statement of the defendant made at the home of the deceased's relatives, after the killing, to the effect that she had killed him and would bury him.

The cutting of the Gibson girl by the defendant occurred very shortly before deceased received his fatal stab. It was a part of the same transaction and explanatory of the motive of the defendant in cutting and killing the deceased. It is competent to show the actions, conduct, and general demeanor of the defendant immediately preceding the killing for the purpose of proving that she was armed and in a vicious humor; provided that such conduct is so near to the time of the homicide as to tend to show the state of mind of the defendant at the time of the killing. In this instance, we think this evidence is clearly a part of the res gestae, and the mere fact that it incidentally tended to show the commission of another offense in the stabbing of the Gibson girl did not render it inadmissible if for other reasons it was competent. Williams v. State, 4 Okla. Cr. 524, 114 Pac. 1114; Hampton v. State, 7 Okla. Cr. 291, 123 Pac. 571, 40 L. R. A. (N. S.) 43; McLaughlin v. State, 18 Okla. Cr. 627, 197 Pac. 717; 2 R. C. L. § 21, p. 517.

The statement, made by the defendant a short time after the commission of the homicide, to the effect that she had killed the deceased and would bury him, also indicates the frame of mind of the defendant and tends to rebut the statement made by her that she acted in self-defense, and shows that she had no remorse whatever for having taken the life of the deceased. This evidence was competent.

The second assignment of error is to the effect that the verdict and judgment are contrary to the law and evidence.

In this connection it is contended that because a slight intermission occurred between the time the defendant first cut the deceased and the time that the deceased was fatally stabbed by her, the evidence shows that she abandoned the altercation, and even if in fault at the time of the first trouble her right of self-defense revived, and that what afterwards occurred was clearly justifiable.

There is a conflict in the evidence as to whether or not the defendant at any time in good faith abandoned the altercation. On this phase of the law the court gave the following instructions:

"You are further instructed that the right to defend one's self against danger or attack, not of his own seeking, is an inherent right which the law not only concedes, but guarantees to all men. But the law does not permit one to voluntarily seek or invite a combat. The right of self-defense does not imply the right of attack, and will not avail in any case where the difficulty is sought for or induced by the defendant by any willful act of his own, and which the accused voluntarily and of his own free will entered into it, no matter how imminent his peril may become during the progress of the difficulty, unless you should believe that after entering into the difficulty the defendant abandoned the difficulty and attempted to withdraw therefrom, in which event the defendant would be entitled to the right of self-defense after abandoning or attempting to withdraw from the difficulty, although he may have provoked the original difficulty."

The question of whether or not the defendant had abandoned the difficulty in good faith before the happening of the event that resulted in the death of the deceased was, under the evidence in this case, for the jury to decide. The law

relative to the abandonment of a difficulty was sufficiently covered by the foregoing instruction.

The fourth assignment of error relates to the action of the trial court in sustaining certain objections made by counsel for the state to the redirect examination of the defendant.

The objections made to the redirect examination of the defendant were for the reason that the questions asked related solely to matters that had been covered by the direct and cross-examination, and were, for that reason, repetitions of evidence already gone into, and that the questions were also leading and suggestive. After an examination of the record covering this assignment of error, we find no error in the action of the trial court in this respect sufficiently prejudicial to authorize a reversal of this judgment.

For reasons stated, the judgment is affirmed.

BESSEY and DOYLE, JJ., concur.