## LEWIS GRAYSON v. STATE.

No. A-10722.   Dec. 3, 1947.

(188 P. 2d 696.)

Cecil E. Robertson, of Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

BRETT, J. The plaintiff in error, Lewis Grayson (a Negro), hereinafter called defendant, was charged, tried, and convicted of first degree rape and his punishment fixed by the jury at death.

The record herein discloses that the complaining witness, Doris Gene Coley (a white girl), and her fiance, who later became her husband, were sitting in an automobile in Muskogee, Okla., on the night of October 11, 1945, sometime between 9:30 and 10 p. m. The defendant approached the car, opened the door, and held a knife at the throat of Miss Coley's escort. He then forced Miss Coley to remove her escort's belt and to tie her escort's hands. Then he ordered Miss Coley to get under the wheel, her escort in the middle, and he got in on the right-hand side and ordered them to drive him around, under the threat that if they did not do as he told them to do they would suffer the penalty of death at his hands. His various commands were complied with. Later he ordered them to stop the car and her escort was required to lie down in the front seat and hold his hands above his head. Miss Coley was forced into the back seat where the defendant attacked her on her private parts with his mouth, and then had sexual intercourse with her to which outrages she submitted under the threat of death. Then he robbed Miss Coley and her escort of approximately $47. Then, he forced them to drive around some more, stopping a second time in a school yard where he forced Miss Coley, under fear of death, to submit to intercourse a second time. Then he robbed Miss Coley of her engagement ring and class ring and her escort of a wrist watch and a combination cigarette case and lighter with the escort's initials on it. The defendant then required his victims to drive him around some more, stopping near a wire fence. He procured some wire, wired the escort's hands, removed the belt from

the escort's hands, wired the escort's hands to a door handle in the back seat of the car and then he wired Miss Coley's hands together and tied them to the hands of her escort in the back seat. The defendant then left but returned a short time later to see that they were securely tied. He then fled to Taft in a cab and was identified by the cab driver who took him to Taft. While in Taft, he procured the services of another driver to take him to Tulsa. He was likewise identified by the witnesses who helped him procure this car, upon his representation he had received a telegram from his wife whom he represented was ill.

While the officers were in his room in Tulsa, they discovered in the dresser drawer, in the room being occupied by the defendant, the combination cigarette case and lighter. Subsequent to the discovery of this, he made a statement to the police officers in which he admitted the robbery but denied the rape of Miss Coley. In the trial the defendant did not take the stand and deny the charge of rape. He further told the officers that he had pawned the diamond engagement ring to a Negro in Tulsa by the name of Jew for $10. Jew was contacted and brought the diamond ring to the police station. The same was later identified at the trial by Miss Coley as being her diamond engagement ring. In the statement made to the Tulsa police officers, he stated that he had sold the wrist watch to a person whom he could not identify for $4 and had sold the class ring to an unknown soldier for the sum of $9. The wrist watch and the class ring were never recovered. He also admitted giving the combination cigarette case and lighter to Ruby Young, the girl with whom he was staying in Tulsa. After his arrest in Tulsa, the defendant was returned to Muskogee where he was positively iden-

tified by Miss Coley as the person who raped and outraged her, and robbed both her and her escort.

In the trial the defendant offered the defense of insanity, covering a period of time from childhood up to the date of the trial. It consisted of Negro witnesses who had been associated with him at various times under various conditions. No evidence of a psychiatrist was offered. The lay witnesses in behalf of the defendant were his stepmother, his father, his former wife, and an employer. Their testimony was in the nature of opinion evidence, very little of it being factual in nature. It was composed of such statements as follows:

"He would take off his hat, jump up and down on it and scream."

"Frequently he talked to himself."

"He wasn't like other boys because he didn't act like them."

"At certain times he would have spells."

"He got spells occasionally."

"I always said he didn't have good sense."

"No, we didn't find him anywhere because he would go off and not come back."

"When the moon changed he would not help in the kitchen."

"The only time he would have spells was when the moon changed."

"He had two cousins in the State Hospital at Taft and he has one brother who isn't right either."

"Sometimes he has fits when he does carpenter work and he will get mad and throw things around."

The foregoing expressions are very similar to the facts and conclusions drawn by the witnesses in Bingham v. State, 82 Okla. Cr. 5, 165 P. 2d 646, 656. In that case, the court held against the defendant's contentions. In that case, very few facts were given by the witnesses as a basis for their conclusion of insanity. What facts that were given and the conclusions drawn thereon were strikingly similar to those in the case at bar. The conclusions therein were as follows:

"I certainly never found him responsible in any way."

"I thought he was insane."

"He always looked awfully wild."

"I believe he has always been crazy," etc.

There are practically no facts to support the conclusions in the case at bar. Standing alone and practically unsupported by facts, the conclusions were insufficient to raise a doubt in the trial court's mind.

The defendant made no claim of inability to adequately defend by reason of present insanity either before or during the trial, but made the plea of not guilty by reason of insanity his sole defense to the charge. When the jury returned its verdict of the death penalty on December 3, 1945, his counsel thereafter, on December 12, 1945, filed a motion in arrest of judgment which reads in part as follows, to wit:

"Comes now the defendant, Lewis Grayson, in his own proper person and by his undersigned attorney, and respectfully moves the court that no judgment be rendered on the verdict of guilty returned by the jury on the

3rd day of December, 1945, whereby this defendant was found guilty of the crime of rape in the first degree, and his punishment fixed at death, *for the reason that the evidence adduced by the defendant at the trial of this case conclusively shows that the sanity of the defendant is in doubt, and that the said defendant is presently insane.*

"Wherefore, this defendant prays the court that sentence of the accused be continued until his sanity has been passed upon as provided by law.

"Cecil E. Robertson, Attorney for Defendant."

It must be noted that this motion is unverified and not supported by affidavits or a statement as to any new evidence. It is based upon what the trial court heard and observed and the evidence, upon which the jury based its finding against the defendant, in the trial, on his plea that he was insane when the offense was committed. On the same date, the defendant also filed his motion for new trial assigning as one of the grounds therefor, "That the court erred in overruling the defendant's motion in arrest of judgment."

In his brief the defendant does not question the sufficiency of the evidence. Neither does he attack the court's instructions. The court by proper instructions presented the question of sanity to the jury. "However, if there had been error in the instructions, we would not hesitate to consider them even though no exceptions were taken thereto." Steen v. State, 82 Okla. Cr. 141, 167 P. 2d 375-378. Nor does he assert any errors occurring during the trial, or a denial of any of his rights except those set up in assignments of error 4 and 5, as follows:

"No. 4. That the court erred in overruling defendant's motion in arrest of judgment.

"No. 5. The court erred in overruling the motion of plaintiff in error for a new trial."

The contentions sought to be asserted herein are apparently based upon the provisions of Title 22 O. S. A. § 1162, which reads as follows, to wit:

"When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, if a doubt arise as to the sanity of the defendant, the court must order a jury to be impaneled from the jurors summoned and returned for the term, or who may be summoned by direction of the court, to inquire into the fact."

It was said in Bingham v. State, supra, that under the foregoing statute the question of present insanity must be raised "either at the beginning of the trial or before judgment and sentence was pronounced upon the conviction." In the case at bar, the question being timely raised, the next inquiry confronting the court is as to whether it has been properly raised and in such manner as to create a doubt in the mind of the court. As was said in Tuggle v. State, 73 Okla. Cr. 208, 119 P. 2d 857, 858, and approved in Bingham v. State, supra, "the court cannot act arbitrarily in the matter" but "it has the right to look to the source of the information and come to a proper conclusion from all the facts and circumstances, whether there is a doubt in his mind as to the sanity of the defendant." Moreover, it was said in the Bingham case:

"Before a trial court impanels a separate jury to try the issue of defendant's present sanity, under the statute, a doubt must arise in the mind of the court," and the existence "of a doubt as to the defendant's sanity must arise from facts and circumstances of substantial character. In other words, there must exist reasons to believe that the claim of insanity made on behalf of the accused is genuine and not simulated as a means of defeating or delaying the law's penalties in cases where all other means of evading punishment would seem hopeless."

In Johnson v. State, 73 Okla. Cr. 370, 121 P. 2d 625-630, wherein the question of present insanity is thoroughly discussed, this court quoted from Denton v. State, 58 Okla. Cr. 275, 53 P. 2d 1136-1139, as follows:

"The question of present sanity of an accused is directed first to the attention of the trial court. The applicable statutes are section 3212 et seq. and section 3106, Okla. Stat. 1931, 22 Okla. St. Ann. § 1162 et seq., and § 925. Under the procedure prescribed when an indictment or information is called for trial, or when, after conviction, the defendant is brought up for judgment, if a doubt arises in the mind of the court as to the present sanity of a defendant, the court must then order a trial of this question by a jury as a question of fact, as in a civil case or special proceeding. The proceeding is outlined in the sections of the statute referred to. If a claim coming from a reputable source is made, either at the beginning of the trial or at the time for judgment and sentence, that a defendant is insane at the time, with a reasonable showing or tender of proof in support thereof, it is the duty of the court to submit the question to a jury. * * *

"When the motion is made and supported by such a showing, then a legal doubt of defendant's sanity arises, and it is the duty of the trial court to impanel a jury and to try the issue. While a trial judge may personally have no doubt of defendant's sanity, yet if the motion and showing in support thereof is substantially as outlined, it is sufficient legally to raise a doubt. In such a case, a refusal to submit the issue to the jury is an abuse of discretion."

It therefore becomes incumbent upon us to look at the claim made following Grayson's conviction and before pronouncement of judgment and sentence. This court in Marshall v. Territory, 2 Okla. Cr. 136, 101 P. 139, said:

"If a statement is made to the court by credible person, or persons, under oath that the defendant is insane—a doubt is raised."

In Wallin v. State, 84 Okla. Cr. 194, 182 P. 2d 788, 792, this court said such a motion "standing without any verification, not even by the attorney who prepared the motion, was clearly insufficient under the circumstances herein involved, to raise a doubt in the court's mind." Herein, it appears in an analysis of the motion in arrest of judgment that the contention of present insanity is not based on any new evidence or condition that had developed since the verdict of the jury and up to the time that the court passed on the motion in arrest of judgment and the motion for new trial. The defendant's position appears to be an attempt to predicate a new claim of present insanity upon the old issue of insanity at the time the crime was committed, which had already been decided. We base this conclusion upon the following language quoted from the motion in arrest of judgment: "* * * for the reason that the evidence adduced by the defendant on the trial of this case conclusively shows that the sanity of the defendant is in doubt and that the said defendant is presently insane."

This situation brings us clearly within the language of Bingham v. State, supra, as follows:

"Since counsel had not requested a separate trial on the question of the defendant's present sanity, but was resting his case solely upon the question of defendant's insanity at the time of the commission of the alleged crime, the court was justified in concluding that there was no sufficient basis for the establishment of a doubt in his mind as to the defendant's present sanity. Although defendant did not testify, he was present during all of the proceedings and the trial court had an opportunity to observe his demeanor during the trial. Under such circumstances, we cannot sustain the contention of counsel that the failure of the court to empanel a jury to try the issue

of defendant's present sanity in the absence of a request therefor was an abuse of judicial discretion."

In the case at bar, we are not unmindful that the defendant in his motion in arrest of judgment prays that the sentence be continued until his sanity has been passed upon as provided by law. Still, we are bound to take notice of the fact that the sole basis for said motion is the evidence adduced by the defendant at the trial. As was said in Denton v. State [58 Okla. Cr. 275, 53 P. 2d 1139], supra:

"The showing in support of a motion in arrest of judgment on the ground of present insanity must be of matters arising subsequent to the verdict," and then said, "Under our statutes, section 3212 et seq., the correct procedure is that where a motion in arrest of judgment on the ground of present insanity is filed, it must be of a substantial character, setting out the facts relied upon to show insanity subsequent to the verdict and it should be supported by affidavits and tender squarely the issue of present insanity. It is not enough that the motion tender an issue of insanity prior to the verdict, for in that case it offers merely a retrial of an issue unsuccessfully urged before the jury. State v. Brinyea, 5 Ala. 241."

In the Denton case there were eight exhibits attached to the motion in arrest of judgment, bearing three affidavits of medical experts (as to present sanity) and certain letters written by the defendant to his parents, and stated more proof would be offered if the question was submitted to a jury. Upon that showing this court held it was an abuse of discretion to not grant a trial by jury of the issue of present insanity. No such situation prevails here. Here we are confronted by the facts that the motion was presented by his attorney, unverified and unsupported by affidavits from any source or a tender of any new or different evidence to that which the trial court heard at the time the issues were presented to him. Under these cir-

cumstances, therefore, there was nothing for the trial court to consider which he had not already seen and heard. Under these conditions, the failure of the court to impanel a jury on the presentation of the question of present insanity raised in the motion for new trial and the motion in arrest of judgment did not amount to an abuse of judicial discretion. This case does not present a comparable situation to that involved in Sapp v. State, 83 Okla. Cr. 53, 172 P. 2d 643, 650, where the defendant raped an eleven-year-old girl and this court modified the conviction to life imprisonment and wherein this court said:

"The supreme penalty of death in the electric chair should not be imposed in this state except in the most aggravated cases * * *."

The case at bar is not an ordinary case. It presents a most aggravated situation. The defendant was guilty of not just one dastardly offense—the record reveals him to be a one-man crime wave. He committed one crime of sodomy, as defined in Title 21 O. S. A. § 886; two crimes of rape, as defined in Title 21 O. S. A. § 1111, subsec. 5; and then he committed two crimes of robbery with a dangerous weapon, as defined in Title 21 O. S. A. § 801.

So far as this defendant is concerned, there is not a single extenuating circumstance in his favor. He has demonstrated his confirmed criminal character beyond doubt. But, even then, we are confronted by the realization that "No more solemn duty can be imposed upon the courts than the duty of protecting, and the duty of taking, human life. To take the life of a human being is an awful thing, even when it is taken by the law." Moore v. State, 75 Okla. Cr. 222, 130 P. 2d 114, 120. For that reason, we have searched the record in an effort to find some legal

ground upon which to sustain the defendant's contention, but in vain.

Here, we are bound by the record as made. There is not the slightest bit of evidence to indicate any change in the defendant's condition since rendition of the verdict and up to the present moment. The only evidence offered in support of the motion for new trial and the motion in arrest of judgment is that presented at the trial on the defense of insanity at the time the crime was committed. The jury heard this evidence and resolved that issue against the defendant. Moreover, in the trial of the case, not once did the defendant's counsel raise the issue that the defendant was unable to make a rational defense to the charge by reason of present insanity. If he seriously entertained such belief at that time, he should have called it to the attention of the trial court. His present claim does not create a situation such as that created by the trial court in the Denton case, supra, wherein the claim of insanity subsequent to the verdict of the jury was amply supported by affidavits of medical experts and other exhibits, etc. Here, it is obvious that counsel did not believe that such a condition existed. If so, we are confident he would have presented the same in the fulfillment of the oath that he took to perform righteously the obligation to his client. Moreover, it is apparent that he did not believe any additional proof of present insanity was obtainable or he most assuredly would have tendered it and would not have relied upon the proof which was presented at the trial on its merits. Suffice it to say, counsel for the defendant was as silent as the tomb, with reference to the plea of present insanity during the trial, as the record is equally silent as to proof of insanity subsequent to the verdict. There is not one scintilla of additional evidence to support the claim of insanity after the verdict, and not the slightest

tender of additional proof, to that which the trial court had already heard. There is nothing in this case that would justify this court in interfering with the judgment and sentence. As this court held in Forrest v. State, 46 Okla. Cr. 426, 287 P. 1052, after stating the maximum penalty for first degree rape is death:

"Where the death penalty is assessed in an extreme case * * * on the verdict of the jury * * * and no reason requiring the modification of the punishment is apparent, the judgment will be affirmed."

But, even in the face of the record as here made, the law does not close the door to proof of present insanity if the same is well founded. If counsel for the defendant still believes in the present insanity of the defendant, the way is open to him to establish it, as this court said in Steen v. State, 82 Okla. Cr. 141, 167 P. 2d 375, 379:

"The defendant having received a death sentence in this case, we desire to call attention to 22 O. S. 1941 § 1005, which provides: 'If, after his delivery to the warden for execution, there is good reason to believe that a defendant under judgment of death has become insane, the warden must call such fact to the attention of the county attorney of the county in which the prison is situated, whose duty it is to immediately file in the district or superior court of such county a petition stating the conviction and judgment and the fact that the defendant is believed to be insane and asking that the question of his sanity be inquired into. Thereupon, the court must at once cause to be summoned and impaneled from the regular jury list a jury of twelve persons to hear such inquiry.'"

Here, counsel for the defendant can and should, if he believes in the present insanity of the defendant, call the matter to the attention of the warden, that the de-

fendant might be placed under observation. Further, Steen v. State, supra, says:

"Under this section, provision is made for a proper investigation as to the sanity of one prior to his execution; and as we stated in the recent case of Alfred Clarence Bingham v. State, [82 Okla. Cr. 5, 305] 165 P. 2d 646, 656: 'The Governor of the state, likewise, has power to appoint expert alienists to observe the defendant and make an inquest into his sanity.'

"We now recommend such action be taken by the Governor before the execution of this sentence is carried out."

We make such a recommendation in the case at bar.

Finding no error, the judgment of the district court of Muskogee county, Oklahoma, is accordingly affirmed. The original time for execution of the judgment and sentence having expired due to the pendency of this appeal, it is considered, ordered, and adjudged that the judgment and sentence of the district court of Muskogee county, Oklahoma, be carried out by electrocution of this defendant on the 26 day of March, 1948.[1]

BAREFOOT, P. J., and JONES, J., concur.

---

[1]The Federal Bureau of Investigation records disclose that this defendant Lewis Grayson, was convicted in Muskogee County in 1931 of second degree rape. In 1933 he was convicted in Creek County of second degree burglary. In 1939 he was convicted in Muskogee County of larceny of livestock. He served a term in the penitentiary for each of these crimes and was released from the penitentiary in 1942. In 1945 he was convicted of the crime of rape—this time in the first degree—the crime involved in the case herein.