Lloyd E. TERRILL, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14825.

Court of Criminal Appeals of Oklahoma.

Feb. 26, 1969.

Jerry D. Sokolosky, Ed Abel, Lampkin & Wolfe, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Asst. Atty. Gen., for defendant in error.

## MEMORANDUM OPINION

NIX, Judge:

Plaintiff in error, hereinafter referred to as the defendant, was charged by information in the District Court of Oklahoma County with the crime of Operating A Motor Vehicle While Under the Influence of Intoxicating Liquor, After Former Conviction of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor. On November 15, 1967, defendant withdrew his former plea of not guilty to the information, and entered his plea of guilty. On January 2, 1968, the trial judge sentenced defendant to three years in the penitenitary, the last two of which to be suspended. Defendant then gave notice of intent to appeal said judgment and sentence, and filed his timely appeal in this Court.

Defendant's first proposition of error alleges that at the time of his plea of guilty, he was not a competent person. This Court has thoroughly searched the record filed herein, and find no indication that the learned counsel for the defendant, at any time, felt that the defendant was not competent to enter a plea, or that he did not know right from wrong.

 The conclusion now urged by counsel that the defendant is or was insane has no basis in fact, but is an erroneous inference drawn by him after the pre-sentence investigation report was filed.

This report, made by the Department of Corrections, states:

"In 1954, the subject was committed by the Court to Central State Hospital, Norman, Oklahoma, and was confined there for approximately one year and then discharged. He has never been restored to mental competency by the County Court and no information can be obtained in regard to this committment."

This Court does not believe that the courts of our state do not keep accurate records, with the exception of human error. We presume they are diligent in maintaining accurate accounts of their proceedings; and with such a presumption, this Court

finds it hard to believe that *if* the commitment of the defendant to a mental institution were actually for insanity, after proper examination and hearing there would be little or no record of such.

Further, the pre-sentence report does not indicate that the defendant was insane or incompetent at the present time.

The report quotes from the records of the hospital, wherein the psychiatric impression of the defendant was described as "passive aggressive," and his personality characteristic as "passive-dependent type with addiction to alcohol." The passive-dependency reaction is described in Davidson, Forensic Psychiatry, at pages 329 and 330, as set forth in the Attorney General's brief, as follows:

"A personality disorder *(not amounting to a psychosis or neurosis)* characterized by general inadequacy, tendency to lean on others, and indecisiveness. The patient's inadequacies are reflected by his own lack of self-confidence and tendency to cling to others. When this reaction is to become stubborn, to pout, to procrastinate, or to obstruct, the condition is aggressive reaction." (Emphasis supplied.)

"In the same work, the aggressive reaction to which reference is made in the records of the hospital and which the Department of Corrections quoted in its report is defined as follows:

'A personality disorder *(not neurosis or psychosis)* characterized by resentment, irritability, or temper tantrums as a result of inability to cope with frustration.' (Emphasis added.)

"Personality disorders may develop into, but are not of themselves, insanity; they are emotional disorders characterized by difficulty in relating to others or to the society. It is the unusual person who has no personality disorder, so much so that it could be said that the normal state of human existance involves some emotional variance or instability. That condition is a creature of our times, and normality is no longer described in terms of the absence of disorder, but of the lesser degree."

"We realize that the courts are not bound by medical terms defining sanity, but of necessity must resort to their own definitions. Yet frequently the conclusions reached by the two professions are not dissimilar, and we have included this portion of the discussion to show that from a medical standpoint, the defendant, while plagued by emotional problems more severe than those considered 'normal', has difficulties falling far short of insanity."

Nowhere in the record is the issue of insanity raised, and from the "Plea of Guilty: Summary of Facts" filed in the case as a part of the minutes, it is quite apparent that the defendant and his attorney thought him quite capable of withdrawing his plea of not guilty and entering his plea of guilty. Further evidence of this is to be found at the hearing prior to the passing of judgment and sentence, wherein the following was recorded:

"THE COURT: There is some question as to whether Mr. Terrill's plea was taken before a court reporter on November 14th. Of course, Mr. Sokolosky, his attorney, was present and okeyed and approved the Summary of Facts taken upon Mr. Terrill's plea of guilty on that date. For the record, and we have a court reporter present at this time, was the defendant's plea of guilty freely and voluntarily entered and had he been advised of his rights at that time?

MR. SOKOLOSKY: It is my opinion that his rights were fully explained to him and he entered his plea freely and voluntarily."

The reasonable inference is that the counsel for the defendant had no doubt of the sanity of the defendant until well after the pre-sentence report was submitted to the trial court, and then counsel drew the inference, erroneous though it may be, that the defendant was insane at the time of his pleadings.

Further, the trial court had opportunity to observe the actions and demeanor of the defendant on each of the occasions on which the defendant appeared before the court. There was nothing to indicate to the court that the defendant could not defend himself or that he did not understand the nature of the proceedings. No motions were made nor was any evidence presented to the court before judgment and sentence were entered to raise a doubt in the mind of the court. In the case of Grayson v. State, 85 Okl.Cr. 266, 188 P.2d 696, the Court said in the second paragraph of the syllabus:

"The plea of present insanity, going to the accused's inability to defend or the court's right to impose sentence, under the provisions of Title 22, O.S.A. § 1162, must be raised either at the beginning of the trial or before judgment and sentence is pronounced."

To that effect are Mitts v. State, Okl.Cr., 345 P.2d 913 (1959); Maass v. Phillips, 10 Okl. 302, 61 P. 1057 (1900); Tuggle v. State, 73 Okl.Cr. 208, 119 P.2d 857 (1944); Ex parte Gilbert, 71 Okl.Cr. 268, 111 P.2d 205 (1941); Ex parte Sisson, 90 Okl.Cr. 47, 210 P.2d 185 (1949); Hanger v. Raines, Okl.Cr., 357 P.2d 251 (1960).

In the fourth paragraph of the syllabus in *Grayson,* supra, the court stated:

"Before the trial court empanels a separate jury to try the issue of the defendant's present insanity, under the statute, a doubt must arise in the mind of the court, from the facts and circumstances which facts and circumstances should be of a substantial character."

█ In the instant case, the trial judge questioned the defendant in regard to his plea and made every effort to find out if the defendant understood the nature and consequences of his acts before the court. He tried to determine if the plea was a voluntary act of the defendant, and from the questions propounded to the defendant and his attorney, it clearly appears that the defendant did in fact understand what was happening and exactly what he was doing.

In the case of Ex parte Sisson, supra, this Court stated in the fourth paragraph of the syllabus:

"Where petitioner contends in habeas corpus proceeding that he was mentally unbalanced at the time he was arraigned in District Court on charge of rape so that he did not comprehend the nature of the charge against him, but record discloses that upon his arraignment court appointed two attorneys to represent the accused who entered a plea of not guilty for him; that several days later the accused appeared in open court with counsel and withdrew his plea of not guilty and entered a plea of guilty, and court examined accused at length in open court in which he detailed the facts surrounding the commission of said alleged crime; under such circumstances the court was justified in accepting the plea of guilty and pronouncing sentence, where there was nothing said or done in the presence of the court by the accused to indicate that he was incapable of understanding the nature of the proceedings against him * * *"

See, also Wallin v. State, 84 Okl.Cr. 194, 182 P.2d 788 (1947); and Morris v. State, Okl.Cr., 356 P.2d 757 (1960), which hold that when no evidence is presented to the trial court before judgment and sentence to raise the question of sanity *at the time of the proceedings,* it is no ground upon which to have the plea of guilty set aside.

█ At no time before the judgment and sentence were rendered in this case was there any request for a jury to try the question of the defendant's *present* insanity. The defendant presented absolutely no evidence to the court before judgment and sentence were rendered which would indicate the defendant was unable to aid in his defense. The defendant was represented throughout the proceedings by one of the most competent attorneys in the State of Oklahoma, who surely would not have allowed the defendant to plead guilty to this crime if he had any doubts as to the sanity of the defendant, or had any difficulty in working with the defendant.

The fact that the question of insanity was never raised weighs heavily with the trial court in determining whether there is any doubt of the defendant's present insanity, Tuggle v. State, 73 Okl.Cr. 208, 119 P.2d 857 (1941); Bingham v. State, 82 Okl.Cr. 5, 165 P.2d 646 (1946).

Also, counsel for the defendant, in effect, argues that whether the issue of the defendant's present insanity was affirmatively raised by him or not, the issue raised itself before the court, in that there was a continuing presumption of insanity by virtue of the defendant's having been committed to a mental institution at a prior time. Counsel cites Galbraith v. Lackey, Okl.Cr., 340 P.2d 497 (1959) as authority. In that case the defendant had been found not guilty of one crime by virtue of insanity at time of the commission of the crime. When the state delayed in prosecuting the defendant on two other charges because of the insanity verdict at the first trial, the defendant petitioned this Court to compel prosecution on the remaining charges. The Court distinguished present insanity and insanity at the time of the commission of the crime, and ordered the county attorney either to dismiss the other charges or to set the cause for early disposition, their reasoning being that although the defendant had been found insane at the time of the commission of one crime, he had been found by a separate jury before his trial to be presently sane, and it therefore became the duty of the jury considering the charges against the defendant to consider the other question of the defendant's insanity at the time of the commission of the crime so charged. In reaching that decision, the Court used the language upon which the defendant relies, that a presumption of continuing insanity is raised that may be overcome by evidence by the State.

The defendant would have the permissive (as opposed to mandatory) language found in *Galbraith* mean that the failure of the State to present evidence to rebut the presumption causes the presumption to become conclusive. But the annotation cited by the defendant, 27 A.L.R.2d 150, to which reference is made in Galbraith v. Lackey, supra, notes that the presumption unrebutted is merely evidentiary, not conclusive. State v. Jones, 191 N.C. 753, 133 S.E. 81; State v. Douglas, 312 Mo. 373, 278 S.W. 1016; Yantis v. State, 95 Tex.Cr.R. 541, 255 S.W. 180; Armstrong v. State, 30 Fla. 170, 11 So. 618, 17 L.R.A. 484; Yankulov v. Bushong, 80 Ohio App. 497, 77 N.E.2d 88; Gibbs v. State, 192 Tenn. 529, 241 S.W.2d 556; Hunt v. State, 33 Tex.Cr.R. 252, 26 S.W. 206; Adams v. State, 49 Okl.Cr. 94, 292 P. 385.

In Adams v. State, supra, the Court adopted the language of Fetterly v. Randall, 92 Cal.App. 411, 268 P. 434, and said:

> "General insanity admitted or once proved to exist, is presumed to continue, and if a recovery or lucid interval is alleged to have occurred, the burden to prove such allegation is on the person making it. * * * The rule above stated that insanity once proved is presumed to continue, obtains only in cases of chronic or permanent nature. *If insanity, admitted or proved, is only occasional or intermittent, the presumption of its continuance does not arise, and he who relies on such insanity proved at another time, must prove its existence also at the time alleged."* (Emphasis ours.)

▬▬▬ Even conceding for a moment that the presumption of insanity arose in the pre-sentence report and came to the knowledge of the trial court, a supposition of which we disposed of in the first part of this proposition, a second presumption would of necessity arise concurrently with the first that the insanity, if any, had been only occasional or intermittent and not chronic or permanent, since according to the report on which defendant so heavily relies, the defendant had been discharged from the institution, and at later dates had been admitted and discharged again. If such be the case, the burden was on the defendant to prove affirmatively that his insanity continued; and as we have shown in the discussion above, he failed in that respect completely.

This Court is of the opinion that defendant's allegations are without merit. The judgment and sentence is affirmed.

BRETT, P. J., and BUSSEY, J., concur.